IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA COMMUNITY DEVELOPMENT COALITION, INC. | : : : | |
| | : | CIVIL ACTION |
| v. | : | No. 25-246 |
| | : | |
| AGNES A. WELLS | : | |

**McHUGH, J.**                                                                                         **April 21, 2025**

## MEMORANDUM

This case arises out of a petition filed in state court under Pennsylvania's Abandoned and Blighted Property Conservatorship Act ("Act 135") to rehabilitate a dilapidated home in a Philadelphia neighborhood. An established community group whose sole purpose is to rehabilitate abandoned properties filed an Act 135 petition to serve as conservator of the property, to improve it or at a minimum prevent further decay. First passed in 2008, Act 135 was not widely used until amendments in 2014, after which petitions pursuant to the Act increased, often brought by nonprofit entities like the plaintiff here.[1] The federal Department of Housing and Urban Development holds two mortgages on the property, and upon receiving notice of the Act 135 petition removed the matter to federal court.

Plaintiff seeks remand. I recognize that Act 135 is an important tool that empowers local communities to address nuisance properties, and agree that property matters governed by state law are best resolved in state courts. But I am bound by federal removal statutes, which allow the federal government to remove civil actions directed to them, such as this petition, and I must deny Plaintiff's motion for remand.

---

[1] *Battling Blight in Pennsylvania: The Abandoned and Blighted Property Conservatorship Act,* J. Berkman, W. Branton, P. Leiber, <u>Pennsylvania Bar Quarterly,</u> 1-15 January 2024.

I. **Facts as Pled**

182 West Durham St. ("the Property") is a deteriorating house on a tree-lined street in the Mount Airy neighborhood of Philadelphia. Mot. to Remand, ECF 5, at 8[2] ("Rem."). The Property belongs to Ms. Agnes A. Wells, who now resides at a complete care facility. Pet. for the Appointment of a Conservator, ¶¶ 9-11, ECF 6 ("Pet."). There are no identified heirs to the property, which now sits vacant and abandoned. *Id.* ¶ 15, 22.

This is precisely the type of property that Act 135 is designed to address. Pennsylvania's Abandoned and Blighted Property Conservatorship Act was enacted to provide a viable remedy for neighbors and non-profit organizations seeking to address nuisance properties. 68 P.S. §§ 1101, *et seq*.; Rem. at 7, n.1. Under Act 135, "parties in interest" may file a petition for temporary conservatorship. 68 P.S. § 1104. Once this petition is filed, the state court conducts a hearing to first determine whether a property satisfies the conditions to make it eligible for conservatorship. *Id.* § 1105. If the conditions for conservatorship are satisfied, the property owners are given an opportunity to remediate before the conservatorship is assigned. *Id.* If a conservator is assigned, they are tasked with rehabilitating the Property and preparing it for sale. *Id.* § 1106.

On November 20, 2024, the Philadelphia Community Development Coalition ("PCDC") filed a petition to place the Property under conservatorship. Pet. at 7. PCDC is a non-profit organization whose purpose is to remove blights and rehabilitate properties within Philadelphia neighborhoods. *Id.* ¶ 4. Under Act 135, PCDC is a "party in interest" as a non-profit corporation located in Philadelphia that has participated in a project within a five-mile radius of the Property. 68 P.S. § 1103; Pet. ¶ 8. The Petition sought to either compel Ms. Wells to repair the identified

---

[2] Page numbers reflect pagination designated by the ECF system.

blighting conditions on the Property or to place the Property into a temporary conservatorship. Rem. at 8.

In preparation for its Act 135 Petition, PCDC secured a title report on the Property to identify liens of record. *Id.* at 9. The title report showed that two mortgage liens existed on the property, both assigned to the Secretary of Housing and Urban Development ("HUD"). *Id.* Both mortgages are Home Equity Conversion Mortgages ("HECM"), a type of reverse mortgage program offered by the Federal Housing Administration. *Id.* The HECM program was created "to meet the special needs of elderly homeowners," and allows them to use equity in their home to pay for aging in place. *See* 28 U.S.C. § 1715z-20(a)(a); Resp. to Rem., at 3, ECF 11 ("Resp."). The total balance due on HUD's senior reverse mortgage is $468,985.28, and the Government avers that the only way to recoup these funds is through proceeds from the sale of the Property. Resp. at 4.

Act 135 recognizes that as a lienholder, HUD is a "party in interest." 68 P.S. § 1103. Upon learning of HUD's lienholder status, PCDC served HUD with Notice of the Act 135 Petition ("Notice") on December 13, 2024.[3] Resp. at 3. The Notice explained that HUD could file a petition to intervene or seek to be appointed as conservator, or risk losing its rights to and interest in the Property. *Id*. at 8. The Notice continued that if a conservator is ultimately appointed, the conservator may incur expenses in repairing the property that would become a lien, taking priority over HUD's two HECM liens. *Id.* at 8-9; *see also* 68 P.S. §§ 1103, 1109.

Before the state court was able to hold a preliminary evidentiary hearing on whether the conditions warranted appointment of a conservator, HUD, concerned that its lien would be

---

[3] HUD avers that Plaintiff only served them at the Department of Housing and Urban Development and has not also served the U.S. Attorney's Office or the Attorney General of the United States, as required by Federal Rule of Civil Procedure 4(i)(2). Resp. at 3, n.1.

extinguished, added itself to the case caption and removed the Petition to federal court on January 15, 2025.[4] Rem. at 8, 13. Notably, HUD, labeled as a lienholder on the state docket and not as a defendant, did not file a petition to intervene as suggested in the Notice, but instead moved immediately to remove. *Id.* at 15.

HUD asserts that removal is proper pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1), and 1444.[5] *See* Notice of Removal, ECF 1. Plaintiff contends that because HUD was not a defendant to the underlying *in rem* action and never filed a motion to intervene, HUD lacked capacity to remove pursuant to §§ 1441 and 1442. Plaintiff also argues that the underlying Act 135 Petition falls beyond the reach of § 1444, rendering removal on that basis impermissible as well.[6]

## II.    Standard of Review

As courts of limited jurisdiction, federal courts closely scrutinize removal. On a motion to remand, a federal district court should "assume as true all factual allegations of the complaint," and resolve "all doubts" "in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (cleaned up). The removing party has the burden of proving that an action has been properly removed. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).

---

[4] Parties do not contest that the removal was timely.

[5] The Government also argues that jurisdiction exists pursuant to 28 U.S.C. § 1346(f), which provides that "The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

[6] Plaintiff also observes that HUD's removal threatens Ms. Wells' interests, for the removal cut off the conservatorship evaluation process, which would have given Ms. Wells or her heirs an opportunity to retain and repair the property without conservatorship. Rem. at 11-13.

### III. Discussion

Because I find that the Government had standing to remove under § 1442(a)(1), Plaintiff's Motion to Remand will be denied. I decline to rule on the Government's alternative justifications for removal.

#### A. 28 U.S.C. § 1442(a) must be broadly construed.

Section 1442(a) provides that:

> (a) a **civil action** … that is commenced in a State court and that is against or **directed to** any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>> (1) The United States or **any agency thereof** … for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for … the collection of the revenue.

28 U.S.C. § 1442(a) (emphasis added).

There is broad removal jurisdiction under § 1442(a). This is because the purpose of this section of the removal statute is to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Ariz. v. Manypenny*, 451 U.S. 232, 241 (1981). Unlike the general removal statute, § 1441, which must be construed narrowly in favor of remand, § 1442 is "broadly construed" in favor of a federal forum. *See In re Commonw.'s Mot. to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015) (citing *Sun Buick v. Saab Cars USA*, 26 F.3d 1259, 1262 (3d Cir. 1994)); *see also Serfass v. Oliveras-Smith,* No. 19-806, 2019 WL 33184466, at *2 (E.D. Pa. July 22, 2019) (same) (McHugh, J.). As such, the policy favoring removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Manypenny*, 451 U.S. at 242.

Plaintiff argues that HUD's removal under § 1442(a) was improper because HUD was not a defendant in the underlying state court action, and because the underlying state court convenorship action was an *in rem* proceeding. I will address these arguments in turn.

First, Plaintiff is correct that the Government was not joined as a "defendant" in the underlying state case. Although § 1441 requires that one must be a defendant to the action to remove, § 1442 does not include the same limitation. This difference is the product of a series of amendments to the federal removal statute that made it easier for the government to remove actions involving its agencies. In 2011, Congress clarified that removal is appropriate where the state action is "against or **directed to**" a federal agency. The Removal Clarification Act of 2011, Pub. L. 112-51, 125 Stat. 545 (2011) (emphasis added). This implies that a federal agency or actor need not be a named defendant for removal to be proper.

Here, while the Petition was not *against* HUD, it was certainly *directed to* them. Upon filing their Petition in state court, Plaintiff also served HUD with the requisite Act 135 Notice for "parties in interest," which explained that if HUD did not intervene, HUD's lien might be extinguished. The Notice directly informed HUD that its rights could be at risk under the Act 135 Petition and encouraged their participation. As such, the Petition was "directed" to HUD, giving it standing to remove under § 1442(a).[7]

Second, it is immaterial that the underlying state court conservatorship action was *in rem*. Section 1442(a) applies to all "civil actions," which Congress clarified in 2011 to include "ancillary proceedings, so long as a 'judicial order' is sought or issued." *Def. Ass'n*, 790 F.3d at

---

[7] Although HUD should have first filed a petition to intervene, removal under § 1442 is not limited to parties. Further, as a party in interest to the Petition, HUD had a right to intervene. Remand to address this procedural failure would be wasteful, as HUD would retain the right to intervene and remove the action again. It would, however, have been better practice for HUD to follow the procedural rules that bind all litigants.

467 (citing Pub. L. 112-51, 125 Stat. 545). Here, the underlying Petition seeks a judicial order to appoint PCDC as conservator, making it a civil action to which § 1442 applies. And while the underlying Petition was filed *in rem* with no named defendants, nothing in the amended language of § 1442 precludes removal of *in rem* disputes.[8] Admittedly, Plaintiff's Act 135 Petition is the type of civil action that infrequently finds its way to federal court, but it nonetheless directly implicates Government interests that would otherwise be adjudicated in state courts.[9]

I conclude that the case falls within the broad language of § 1442(a).

### B. HUD's removal under 28 U.S.C. § 1442(a) was proper.

To remove pursuant to § 1442, the removing party must show (1) it is a "person" within the meaning of § 1442(a); (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against it are "for or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the claims. *Def. Ass'n*, 790 F.3d at 467. HUD satisfies this showing.

First, HUD is a "person" under the statute because it is a federal agency, enumerated as covered by § 1442(a)(1).

---

[8] Plaintiff relies on two cases that I find distinguishable. It cites *King v. First Nat'l Bank*, 360 F.Supp. 501 (W.D. Va. 1973) for the proposition that determination of lien priority is a legal matter reserved for resolution in state court. But the court there relied on the fact that the government's lien would *not* be affected by the state action in the case, and here it could be. Plaintiff also relies on *Fountain Park Co-op., Inc.* to argue that § 1442(a) "does not apply where state court is acting *in rem* to adjudicate adverse claims to money in its control with a federal officer being one of claimant." Rem. at 18 (citing *Fountain Park Coop., Inc. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 289 F. Supp. 150, 154-55 (C.D. Cal. 1968)). Critically, *Fountain Park* (and *King*) predates the 2011 amendments to § 1442, which greatly expanded the availability of federal officer removal.

[9] For example, other federal courts to consider government removal of *in rem* claims have explained that "courts routinely construe § 2410's requirement that the Government be 'named a party in any civil action or suit' broadly, including situations where the purpose of the action is to determine the priority of claims to money or property." *See In re 3660 La. Hacienda Drive*, 2017 WL 2190056, at *2 (C.D. Cal. May 17, 2017) (citing *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 634 (5th Cir. 2002)).

Second, Plaintiff's claims are based on HUD's conduct "acting under" the authority of the United States, because HUD's lienholder status on the Property is a product of its participation in the federal HECM statutory program.

Third, Plaintiff's claims against HUD are "relating to" an act under color of federal office. Under this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Def. Ass'n*, 790 F.3d at 471 (citations omitted). Plaintiff's Act 135 Notice to HUD relates to HUD's HECM lien on the Property.

Fourth, HUD raises three colorable federal defenses. "A defense is colorable for the purposes of determining jurisdiction under § 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 783 (E.D. Pa. 2010). Here, the Government argues that it has not waived its sovereign immunity, that Act 135 is preempted by the HECM statutory scheme under the Supremacy Clause, and that in failing to serve the Petition or Notice on the U.S. Attorney General or the U.S. Attorney's Office, Plaintiff failed to effect service on HUD. At least two of these defenses are rooted in established law, and thus certainly colorable.[10]

The Government has therefore properly removed under § 1442 and established jurisdiction. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Congress has decided" that "the Federal Government itself" required "the protection of a federal forum").

---

[10] Assuming that a notice such as this must comply with the same requirement as service of legal process, it is unclear to the Court how HUD can seek federal jurisdiction while simultaneously contending that service was invalid.

## IV.   Conclusion

For the reasons set forth above, Plaintiff's Motion to Remand must be denied. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge